UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| FREDERICK H. DAWSON,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>Defendant. | NO. C12-790-RSM-JPD<br><br>REPORT AND RECOMMENDATION |

Plaintiff Frederick H. Dawson appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") which denied in part his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an administrative law judge ("ALJ"). For the reasons set forth below, the Court recommends that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I.     FACTS AND PROCEDURAL HISTORY

At the time of the administrative hearing, Plaintiff was a 61-year-old man with a ninth-grade education and no GED. Administrative Record ("AR") at 50, 206. His past work experience includes employment as an assistant prep cook and truck driver. AR at 483.

REPORT AND RECOMMENDATION - 1

1  Plaintiff last worked in 2008, but his earnings have not risen to the level of substantial gainful
2  activity since his alleged onset date, November 20, 2004.  AR at 216.
3      On March 8, 2007, Plaintiff filed a claim for SSI payments and an application for DIB.
4  AR at 206-08, 211-14.  Plaintiff asserts that he is disabled due to a torn left rotator cuff, heart
5  problems, hypertension, stomach ulcers, depression, insomnia, anxiety, back pain, and high
6  cholesterol .  AR at 233.
7      The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 79-
8  82, 84-95.  Plaintiff requested a hearing, which took place on June 10, 2010.  AR at 42-66.  On
9  July 30, 2010, the ALJ issued a decision finding Plaintiff not disabled before March 26, 2009,
10 and denied benefits based on his finding that before March 26, 2009, Plaintiff could have
11 performed specific jobs existing in significant numbers in the national economy.  AR at 20-37.
12 Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR
13 at 1-6, making the ALJ's ruling the "final decision" of the Commissioner as that term is
14 defined by 42 U.S.C. § 405(g).  On March 5, 2012, Plaintiff timely filed the present action
15 challenging the Commissioner's decision.  Dkt. Nos. 1, 3.

16                II.   JURISDICTION

17     Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§
18 405(g) and 1383(c)(3).

19               III.   STANDARD OF REVIEW

20     Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of
21 social security benefits when the ALJ's findings are based on legal error or not supported by
22 substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th
23 Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is
24 such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

### IV.   EVALUATING DISABILITY

As the claimant, Mr. Dawson bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted). The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are

REPORT AND RECOMMENDATION - 3

of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At step five, the burden shifts to the Commissioner. *Id.* If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps. Step one asks whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b).[1] If he is, disability benefits are denied. If he is not, the Commissioner proceeds to step two. At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities. If the claimant does not have such impairments, he is not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled. *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[1] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit. 20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## V.   DECISION BELOW

On July 30, 2010, the ALJ issued a decision finding the following:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2013.

2. The claimant has worked, but has not engaged in substantial gainful activity since November 20, 2004, the alleged onset date.

3. Since November 20, 2004, the claimant has had the following severe impairments: right rotator cuff injury; history of left rotator cuff strain; hepatitis C; depression; polysubstance abuse; learning disorder; personality disorder; and dementia.

4. Since November 20, 2004, the claimant has had the following non-severe impairments: hypertension and coronary artery disease.

5. Prior to March 26, 2009, the date the claimant became disabled, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

6. Prior to March 26, 2009, the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) (the ability to stand/walk 6 hours total in an 8 hour day; sit for 2 hours total in an 8 hour day; and lift and carry 50 pounds occasionally and 25 pounds frequently).  However, the claimant was limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-

related decisions, and in general, relatively few work place changes. The claimant was further limited to no more than occasional interaction with supervisors, co-workers, or the general public. As the claimant is illiterate, he was only able to read simple words and would not have been able to follow simple instructions if they were written. Further, due to the claimant's history of substance abuse, the claimant was limited to occupations which did not involve the handling, sale, or preparation of food/alcoholic beverages or access to narcotic drugs, and which were not in the medical field.

7. Since November 20, 2004, the claimant has been unable to perform any past relevant work.

8. Prior to the established disability onset date, the claimant was an individual of advanced age.

9. The claimant is illiterate and is able to communicate in English.

10. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled.

11. Prior to March 26, 2009, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

12. Beginning on March 26, 2009, the severity of the claimant's impairments has met the criteria of section 12.04 of 20 C.F.R. Part 404, Subpart P, Appendix 1.

13. The claimant was not disabled prior to March 26, 2009, but became disabled on that date and has continued to be disabled through the date of this decision.

14. The claimant's substance use disorder(s) is not a contributing factor material to the determination of disability.

AR at 23-37.

## VI.   ISSUES ON APPEAL

The principal issues on appeal are:

1. Whether the ALJ erroneously found that Plaintiff could perform the lift/carry requirements of medium work;

2. Whether the ALJ erred in discounting Plaintiff's credibility;

REPORT AND RECOMMENDATION - 6

3.   Whether the ALJ erroneously found that Plaintiff could perform jobs requiring language abilities despite his finding that Plaintiff is illiterate; and

4.   Whether the ALJ erred in declining to reopen Plaintiff's prior applications for benefits.

Dkt. No. 15 at 1-2.

## VII.   DISCUSSION

A.   <u>The ALJ Erred in Crediting Dr. Burdick's Lift/Carry Restrictions as Consistent With Medium Work.</u>

On July 5, 2007, Robert Burdick, M.D., completed a physical evaluation of Plaintiff, opining *inter alia* that Plaintiff "could lift and carry occasionally up to 40 or 50 pounds and frequently 10-20 pounds, despite his right rotator cuff injury." AR at 428. The ALJ credited Dr. Burdick's opinion "in that the record is consistent with an ability to function at the medium exertion level," but rejected it to the extent that Dr. Burdick identified reaching and grasping limitations. AR at 31.

In his RFC assessment, the ALJ found that Plaintiff can perform medium work, which is defined in the regulations as involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c). Because Dr. Burdick's credited opinion actually places Plaintiff at slightly less capacity than required in medium-exertion work — Dr. Burdick limited Plaintiff to lifting and carrying 10-20 pounds frequently, rather than 25 pounds — Plaintiff argues that he is between two exertional categories, and the ALJ should have therefore have obtained additional vocational testimony to determine the extent of the remaining occupational base.

The Commissioner posits two alternative arguments in response. First, the Commissioner argues that the ALJ in fact did not fully credit Dr. Burdick's lift/carry restrictions, in light of physical therapy records dated less than three months after Dr.

REPORT AND RECOMMENDATION - 7

1  Burdick's examination, showing that Plaintiff could incline bench press 30 pounds on each
2  side with no pain.  AR at 558.  Though the Commissioner argues that the ALJ "properly
3  discounted Dr. Burdick's opinion" (Dkt. 16 at 8), the ALJ did not actually discount Dr.
4  Burdick's lift/carry opinion; he credited it as consistent with medium work.  But Dr. Burdick's
5  limitations are not consistent with medium work, because medium work requires the ability to
6  frequently lift and carry 25 pounds — thus the ALJ's decision is not accurate and the Court
7  cannot affirm it as written.

8  The Commissioner next argues in the alternative that the ALJ's error is harmless
9  because Dr. Burdick's restrictions are "much closer to the maximum requirements of medium
10 work" rather than light work, and thus the Court should assume that the occupational base of
11 medium work has not been significantly eroded.  *See* Social Security Ruling ("SSR") 83-12,
12 1983 WL 31253, at *2 (Jan. 1, 1983) ("If the exertional level falls between two rules which
13 direct opposite conclusions . . . [a]n exertional capacity that is only slightly reduced in terms of
14 the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the
15 minimal requirements for a finding 'Not disabled.'").  But if the Court is not willing to assume
16 that, the Commissioner contends that a remand for additional vocational testimony on the issue
17 would be appropriate.

18 Plaintiff contends that either an assumption that medium-level jobs do not actually
19 require medium-level exertion, or vocational testimony to that effect, would be erroneous in
20 light of SSR 00-4p, which states that "the regulatory definitions of exertional levels are
21 controlling."  2000 WL 1898704, at *3 (Dec. 4, 2000).  But additional vocational testimony
22 need not contradict regulatory definitions; a vocational expert might be able to explain whether
23 a representative occupation as generally performed requires lifting more than 20 pounds
24 frequently.

REPORT AND RECOMMENDATION - 8

Accordingly, the Court recommends remanding this matter for further proceedings to allow the ALJ to (1) explicitly address Dr. Burdick's lift/carry restrictions, and/or (2) obtain additional vocational testimony regarding the lift/carry requirements of representative jobs identified at step five.

B.  The ALJ Did Not Err in Discounting Plaintiff's Testimony Regarding Lifting, Reaching, and Grasping.

Plaintiff contends that the ALJ erred in discounting the credibility of Plaintiff's testimony regarding his lifting, reaching, and grasping limitations.[2]  Dkt. 15 at 15.  It is not clear precisely which testimony Plaintiff alleges was improperly discounted, because his briefing does not identify any particular evidence (especially with regarding to reaching and grasping) that the ALJ rejected.[3]  The ALJ referenced Plaintiff's testimony at the administrative hearing that he experiences shoulder pain when he lifts ten pounds on his left side, but Plaintiff's testimony did not reference reaching or grasping.  AR at 54.  The ALJ noted that Plaintiff told Dr. Burdick in July 2007 that he believed he could lift 25 pounds with his left hand and 15 pounds with his right hand, but did not indicate what amount of weight he could lift on a frequent basis.  AR at 425.  Dr. Burdick's notes do not record any statements from Plaintiff regarding his reaching or grasping capabilities.  Finally, the ALJ mentioned that in February 2010, Plaintiff told a provider that though his left shoulder is still "bothersome sometimes," his shoulder was doing better and "much stronger than previous[ly]."  AR at 675.  Thus, the ALJ did not reference any statements made by Plaintiff regarding reaching or

---

[2] Though Plaintiff may have broadened the scope of his challenge to the ALJ's adverse credibility finding in his Reply (Dkt. 17 at 7-9), the Court focuses on the issue as presented in the opening brief.

[3] Though the Commissioner's briefing focuses on Plaintiff's purportedly inconsistent daily activities, the ALJ did not cite those activities as inconsistent with Plaintiff's testimony regarding lifting abilities, and thus that portion of the written decision appears to be irrelevant to this assignment of error.

REPORT AND RECOMMENDATION - 9

grasping issues, and Plaintiff has not identified any in the record that were overlooked.  Thus, because it appears that the Plaintiff did not present any testimony regarding reaching and grasping limitations, the only testimony at issue in this assignment of error is Plaintiff's testimony regarding his lifting abilities.

The ALJ addressed Plaintiff's lifting ability in a paragraph explaining why Plaintiff's statements "are not credible to the extent that they are inconsistent with the above residual functional capacity assessment,":

> The record reflects the claimant had the ability to lift up to fifty pounds back in 2001, and he has consistently shown the capacity to lift thirty pounds throughout the relevant time period ([AR at 246, 558, 633]).  The above residual functional capacity assessment only requires the claimant to lift/carry twenty-five pounds on a frequent basis.

AR at 32.  Plaintiff contends that the ALJ cited evidence that is either irrelevant to his conclusion or does not actually support his conclusion.

As to the 2001 evidence, the ALJ did not err in finding this to be at least minimally relevant because it occurred after Plaintiff's rotator-cuff injury and thus provided some insight into the impact of the injury.  The ALJ further noted that the other evidence of record dated from "the relevant time period," an implicit acknowledgment that the 2001 evidence predated the time period.

As to the other evidence, none of the evidence cited by the ALJ contains an indication that Plaintiff experienced pain after lifting, despite Plaintiff's argument to the contrary (Dkt. 15 at 15).  Indeed, the physical therapy progress note (dated October 30, 2007) indicates that "[Plaintiff] reports going to gym last week and doing incline bench press machine with 30 lbs on each side.  Shoulder feels tired today, but no pain."  AR at 558.  Lastly, though Plaintiff objects to the ALJ's reference to Plaintiff's mental health case manager's opinions regarding Plaintiff's lifting abilities, arguing that this mental health case manager opined that Plaintiff

REPORT AND RECOMMENDATION - 10

could not perform substantial gainful activity, it is not clear why his ultimate conclusion (which was based on Plaintiff's mental impairments, not physical impairments) would undermine his statement regarding Plaintiff's lifting abilities.

Thus, because the ALJ cited relevant evidence to explain why Plaintiff's testimony regarding his lifting abilities was not credible, the Court should affirm the ALJ's adverse credibility finding as to that testimony.

C. <u>The ALJ Erred in Finding, Without Explanation of the Discrepancy, That Plaintiff Can Perform Jobs Requiring Reading and Writing Abilities.</u>

In his written decision the ALJ identified Plaintiff as "illiterate" and "able to communicate in English." AR at 35. The ALJ also specified that he "limited [Plaintiff] to reading only simple words and eliminated his encounter with written instruction." AR at 32.

At the administrative hearing, the ALJ again described Plaintiff as "illiterate" and "only able to read simple words and [] not able to follow simple instructions if they were written," when posing a hypothetical to the vocational expert. AR at 61. The vocational expert testified that Plaintiff could perform a number of jobs that, according to the Dictionary of Occupational Titles ("DOT"), require carrying out written or oral instructions, but the vocational expert testified that in his experience, employees in those jobs are "[u]sually . . . told what they need to do." AR at 63-64. Plaintiff's attorney asked the vocational expert whether reading and writing might be required while applying for these jobs, and the vocational expert testified that though the "employee would need to fill out an application in most instances," there are "lots of ways to accommodate" if the employee could not follow written instructions. AR at 64. The ALJ asked the vocational expert whether his testimony was consistent with the DOT, and he answered affirmatively. AR at 63.

REPORT AND RECOMMENDATION - 11

According to the Plaintiff, the ALJ erred in relying on the vocational testimony to find that Plaintiff could perform the representative jobs identified at step five, given that all of them are defined in the DOT to require some reading and writing.  But the rudimentary language-skill requirements contemplated as a minimum in jobs defined the DOT do not necessarily operate to preclude all jobs for illiterate people; the Ninth Circuit has noted that a "claimant is not per se disabled if he or she is illiterate." 249 F.3d 840, 847 (9th Cir. 2001).  Furthermore, the ALJ specifically found that Plaintiff can communicate in English (AR at 35), and that Plaintiff had the ability to learn how to perform jobs in the past (AR at 32 (ALJ notes that "The claimant showed he had the ability to learn and follow the work procedures for several packaging and recycling job tasks.")).

In light of the ALJ's hypothetical stating *inter alia* that the hypothetical person was illiterate and cannot carry out written instructions, but can communicate in English, the vocational expert testified that such a person could nonetheless perform the representative jobs because in his experience, the job instructions are generally provided orally.  AR 63-64.[4] While this testimony may explain why Plaintiff can perform the jobs despite the ALJ's prohibition on written instructions, it does not explain how Plaintiff can meet the reading and writing language-skill requirements despite his illiteracy.  Though asked to assume that a hypothetical claimant is illiterate, the vocational expert testified that such a claimant could perform jobs requiring either the ability to "recognize meaning of 2,500 (two- or three-

---

[4] The impact of Plaintiff's illiteracy on his ability to complete a hiring process (with or without accommodation) need not be resolved on remand, because the disability inquiry addresses whether Plaintiff can perform the duties of a job, not whether he would be hired for a job. *See Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010) ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment."); 20 C.F.R. § 416.966(c) (inability to obtain work due to employers' hiring practices does not preclude a finding of nondisability).

REPORT AND RECOMMENDATION - 12

syllable) words" and "read at rate of 95-120 words per minute" (at language level 1), or the ability to "write compound and complex sentences" and "read at rate of 190-215 words per minute" (at language level 2). *See* DOT 381.687-018, 915.687-034, 922.687-058.

The vocational expert did not acknowledge these language-skills requirements of the representative jobs in light of the illiteracy restriction, and yet testified that his testimony was consistent with the DOT. AR at 63. The inherent consistency between Plaintiff's illiteracy and the DOT job descriptions went unexplained and thus requires remand for additional proceedings, and additional vocational testimony if necessary, to address the impact of Plaintiff's illiteracy on his ability to perform representative jobs. *See Pinto v. Massanari*, 249 F.3d 840, 846-47 (9th Cir. 2001).

D.  <u>On Remand, the ALJ Shall Reconsider Whether to Reopen Plaintiff's Prior Applications.</u>

Plaintiff previously filed applications for benefits in April 2005, and the ALJ declined to reopen those applications because they address a period during which the ALJ found the Plaintiff to be not disabled. AR at 20. Though Plaintiff contends that his prior applications should have been reopened because there was good cause to support his failure to request Appeals Council review, he does not dispute that, assuming that the ALJ's disability determination was correct, reopening the prior applications would serve no benefit to Plaintiff. Of course, Plaintiff argues that the disability determination was not correct, and the Court agrees that remand is necessary to address errors in the ALJ's decision.[5]

Because this matter is remanded for additional proceedings and could result in a different disability determination, the ALJ on remand should reconsider whether reopening the

---

[5] Though Plaintiff requests reversal and remand for a calculation of benefits, the Court declines to provide that relief because further proceedings would serve a useful purpose. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

REPORT AND RECOMMENDATION - 13

prior applications would serve any benefit to Plaintiff, and if so, whether Plaintiff's right to due process would be infringed by failing to reopen.

## VIII.   CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED to the Commissioner for further proceedings not inconsistent with the Court's instructions.  A proposed order accompanies this Report and Recommendation.

DATED this 22nd day of January, 2013.

*James P. Donohue*

JAMES P. DONOHUE
United States Magistrate Judge